## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-01352-SCT

*MITTIE MORELAND*

*v.*

*JANE RILEY, INDIVIDUALLY, JANE RILEY, AS GUARDIAN OF THE ESTATE OF STEFAN NICHOLAS MORELAND, A MINOR, AND JANE RILEY AS ADMINISTRATRIX DE BONIS OF THE ESTATE OF MARK STEPHEN MORELAND, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/08/95 |
| TRIAL JUDGE: | HON. JERRY G. MASON |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS WICKER |
| ATTORNEY FOR APPELLEE: | JOHN A. FERRELL |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 3/19/98 |
| MOTION FOR REHEARING FILED: | 4/1/98 |
| MANDATE ISSUED: | 7/30/98 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This case involves a dispute over the apportionment of attorney's fees arising from the wrongful death suit of Mark Moreland. This is actually the fourth time these parties have carried their ongoing dispute before this Court. *Riley v. Moreland*, 537 So. 2d 1348 (Miss. 1989) (*Moreland III*); *Moreland v. Riley*, 537 So. 2d 1345 (Miss. 1989) (*Moreland II*); *Moreland v. Moreland*, 537 So .2d 1337 (Miss. 1989) (*Moreland I*). The current dispute arises from a fee dispute between the attorneys for Mittie Moreland, specifically Rhett Russell and Ralph Pogue ("Russell *et al.*"), and the attorneys for Jane Moreland Riley, specifically Joey Langston and Wendell Trapp ("Langston *et al.*").

¶2. The procedural history of this case is quite complex, and is covered thoroughly in the facts below (taken from *Moreland I*), but it is necessary to briefly outline the progress of the case in order to understand the current dispute. Mark Moreland died in a helicopter crash in Alabama. Mittie

Moreland was Mark Moreland's mother and the original administratrix of the estate of her deceased son. Mittie was in the process of suing on behalf of the estate for Mark's wrongful death when she was dismissed and replaced as administratrix by Jane Riley, the ex-wife of Mark Moreland and guardian of his only son, Nick Moreland. Mittie had entered into a contingent fee agreement with Rhett Russell who associated Ralph Pogue ("the Moreland/Russell contract"). Jane Riley entered into a similar agreement with Langston *et al.* Russell/Pogue originally associated a law firm in Alabama. Subsequently, Langston *et al.* associated with the same Alabama firm.

¶3. The litigation in Alabama eventually obtained a large judgment in the wrongful death case of Mark Moreland. Through the Alabama firms's agreement with Langston *et al.*, it took 45 percent of the attorneys' fee, leaving about $316,000 to be divided in some proportion among the Mississippi attorneys. Rhett Russell and his associate Ralph Pogue claimed that they were entitled to the entire amount, because they originally associated the Alabama attorneys, and because they had a valid contingency fee agreement with the original administratrix of the estate, Mittie Moreland.

¶4. Alternately, Langston *et al.* maintained that Russell *et al.* were entitled to only a small part of the fee, or a *quantum meruit* recovery of expenses under this Court's holding in ***Moreland III***.

¶5. The question came before a Special Chancellor below, who found that Russell *et al.* had failed to prove that they were entitled to any fee for work performed on the Moreland wrongful death case. The Chancellor thus awarded the entire fee to Langston *et al.*

¶6. The basis for the chancellor's holding was that Russell *et al.* had not put on evidence sufficient to prove a fee, but instead had relied solely on the proposition that, under their fee contract with Mittie Moreland, they were entitled to no less than 60 percent of the Mississippi portion of the fees. The chancellor found that the 60 percent fee requested was unreasonable, and that the chancellor was without sufficient evidence to award an *in quantum meruit* fee or recovery and awarded Russell *et al.* no fee at all. Aggrieved by the chancellor's decision, Ms. Mittie Moreland appeals the denial of fees to her attorneys, Russell *et al.*, presenting the Court with the following issues:

**I. WHETHER THE CHANCELLOR ERRED IN REFUSING TO AWARD ANY FEES TO RHETT RUSSELL AND RALPH POGUE FOR THEIR WORK IN CONNECTION WITH THE WRONGFUL DEATH SUIT OF MARK MORELAND.**

**II. WHETHER THE CHANCELLOR ERRED IN REFUSING TO PERMIT THE DEVELOPMENT OF THE AMOUNT OF FEES RETAINED BY MR. LANGSTON AND WENDELL TRAPP FOR SIMILAR SERVICES.**

**III. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THERE WAS INSUFFICIENT EVIDENCE UPON WHICH TO BASE AN AWARD OF ATTORNEYS' FEES.**

**IV. WHETHER THE CHANCELLOR ERRED IN MISINTERPRETING AND MISCONSTRUING THE *OBITER DICTA* OF THIS COURT BY LIMITING THE AWARD TO RUSSELL AND POGUE TO THE REASONABLE EXPENSES.**

**V. WHETHER THE CHANCELLOR ERRED IN FAILING TO ADVISE COUNSEL**

**FOR THE PARTIES THAT THE CHANCELLOR DID NOT FEEL THAT HE HAD SUFFICIENT INFORMATION UPON WHICH TO BASE AN AWARD TO RUSSELL AND POGUE.**

## FACTS

¶7. The facts and procedural history of this case stretch back to 1986 and span three separate appeals to this Court. The primary facts of this case were stated by this Court in *Moreland I*:

Mark Moreland departed this life on June 2, 1986, as a result of a helicopter crash in the State of Alabama. At the time of his death he was a resident of Hinds County, Mississippi. Surviving him was the sole heir of his estate, Stefan Nicklous Moreland (hereinafter "Nick"), a minor child. Nick resided with his mother, Jane Moreland, in Lee County, Mississippi, pursuant to a child custody arrangement resulting from the previous divorce of Mark and Jane Moreland. The appellant in this case, Mittie Moreland, is the mother of the decedent, Mark Moreland, and she also resides in Lee County, Mississippi.

On June 11, 1986, Mittie Moreland filed a Petition for Appointment as Administratrix of Mark Moreland's estate. This petition, filed in Hinds County Chancery Court, also asked for Letters of Administration and for authority to bring a wrongful death action on behalf of the estate of Mark Moreland. That same day, a decree was entered by the Hinds County Chancery Court appointing Mittie Moreland as Administratrix of the Estate of Mark Moreland, and authorizing her to sue on behalf of the estate. A proper oath was taken, and Letters of Administration were issued to Mittie Moreland. On that same day, the original wrongful death complaint was filed in Lee County Circuit Court.

On June 12, 1986, a petition was filed by Mittie Moreland in Hinds County Chancery Court seeking the specific authority to file a wrongful death claim on behalf of Mark Moreland's estate, and on behalf of the minor child. On that same day, a decree granting the above requested authority was filed by the Hinds County Chancery Court. On the 12th, Mittie Moreland filed an amended complaint for wrongful death in Lee County Circuit Court. Some time proximate thereto, Jane Moreland received second-hand notice of Mittie's actions, including her appointment as administratrix and her filing of a wrongful death suit in Lee County Circuit Court.

On June 13, 1986, the Lee County Chancery Court granted to Jane Moreland, ex- wife of the deceased, Letters of Guardianship over the Estate of Nick Moreland, sole heir and minor son of the deceased. Also on June 13, Jane Moreland petitioned the Lee County Chancery Court for, and was granted, authority to institute a wrongful death action on behalf of Nick Moreland, minor son of the deceased. Jane Moreland was also granted authority by the Lee County Chancery Court, on proper petition, to hire an attorney on behalf of Nick Moreland, minor son.

On June 17, 1986, Mittie Moreland filed a wrongful death action in the Circuit Court of Jefferson County, Alabama, as Administratrix of Mark Moreland's estate.

On June 20, 1986, Mittie Moreland filed a Motion in Lee County Chancery Court to vacate the order authorizing Jane Moreland to hire an attorney, and to institute a wrongful death action on

behalf of the estate of Nick Moreland. This motion was set for hearing on June 27, 1986, but was stayed indefinitely by order of the Lee County Chancery Court on July 29, 1986.

On June 27, 1986, Mittie Moreland filed a Motion pursuant to Rule 41(a), Miss.R.Civ.P., for voluntary dismissal of her original wrongful death action in Lee County Circuit Court, and the Lee County Circuit Court granted this dismissal without prejudice.

On July 2, 1986, Jane Moreland, as guardian and next friend of Nick Moreland, filed her wrongful death suit in Lee County Circuit Court.

On July 18, 1986, Jane Moreland filed a Petition in Hinds County Chancery Court asking it to set aside its previous decree appointing Mittie Moreland as Administratrix, and its decree authorizing Mittie Moreland to file a wrongful death action. This petition asked the Hinds County Chancery Court to substitute Jane Moreland in said capacity.

On July 31, 1986, Mittie Moreland filed her response in Hinds County Chancery Court to Jane Moreland's petition to have her removed as administratrix.

On August 4, 1986, a hearing was held in Hinds County Chancery Court, Honorable James A. Barnett presiding, on the Petition of Jane Moreland to have Mittie Moreland removed as Administratrix, and have herself substituted in that capacity. On August 5, 1986, the Chancery Court of Hinds County entered an Order invalidating the Letters of Administration previously granted to Mittie Moreland, and also vacated its previous order authorizing Mittie Moreland to file a wrongful death action. The court further ordered that, upon proper application, oath, and bond, Jane Moreland would be appointed Administratrix over the Estate of Mark Moreland.

On August 13, 1986, the Hinds County Chancery Court filed its formal opinion from the above hearing. Therein, the court expressed grave concern over the way the case had been presented to the court thus far. The court realized, however, that the surviving minor son of the deceased, through his duly appointed guardian, was the person entitled to the administration of the estate. Upon realizing that Mittie Moreland was a non-heir of the deceased, and that the surviving minor son would be the sole heir to the estate of the deceased, the court felt that equity required that Mittie Moreland be removed and Jane Moreland be substituted in her place.

On August 14, 1986, the proper application, bond and oath were presented by Jane Moreland, and formal decrees were entered granting her Letters of Administration, authorizing her to hire an attorney on behalf of the minor, and authorizing her to institute a wrongful death action on behalf of the minor. On that same date, Mittie Moreland filed a Motion in Hinds County Chancery Court to vacate and set aside its Order dated August 5, 1986, whereby Mittie's Letters of Administration were revoked and her authority to file a wrongful death suit vacated. Alternatively, Mittie Moreland asked for a new trial pursuant to Rule 59, or for specific findings of facts and conclusions of law pursuant to Rule 52, Miss.R.Civ.P. Finally, Mittie Moreland asked the Hinds County Chancery Court for permission to appeal interlocutorily its Order of August 5, 1986.

On October 27, 1986, a hearing was held on Mittie Moreland's multi-propositional motion. The Chancery Court, Hinds County, affirmed its August 5, 1986, Order removing Mittie Moreland,

vacating her authority to institute a wrongful death action, and substituting Jane Moreland in that capacity. On November 7, 1986, a formal order was entered by the Chancery Court of Hinds County.

*Moreland I*, 537 So. 2d 1337, 1339 (Miss. 1989). Subsequent to the events recounted above, Mittie Moreland filed her notice of appeal contesting the order removing her as administratrix, and that appeal formed the basis of *Moreland I*.

¶8. While *Moreland I* was pending, however, the parties remained busy. First, on July 15, 1987, Jane Riley sought an injunction in Hinds County Chancery Court seeking to prevent Mittie from continuing to participate in the wrongful death suit. *Moreland II*, 537 So. 2d at 1346. While this action was pending, Mittie Moreland filed in the Lee County Chancery Court a petition for declaratory judgment, seeking to establish the validity *vel non* of the contingency contract entered into between her and Rhett Russell ("Moreland/Russell contract"). *Moreland III*, 537 So. 2d at 1350.

¶9. The Hinds County Chancery Court granted the injunction against Mittie Moreland on August 7, 1987, and Mittie appealed, forming the basis of this Court's decision in *Moreland II*. Prior to this Court's decisions in *Moreland I* or *II*, the Lee County Chancery Court issued its declaratory judgment on February 16, 1988, finding the Moreland/Russell fee contract valid. Jane Riley appealed this order, giving birth to *Moreland III*.

¶10. While the decisions in all three *Moreland* appeals were pending at this Court, Mittie Moreland remained a party plaintiff, despite the Hinds County Chancery Court ruling that she was not the proper party, due to statute of limitations concerns in the wrongful death suit. Additionally, the chancellor noted that Russell *et al.* continued working on the case throughout the period prior to this Court's three *Moreland* decisions, apparently in the hopes that Mittie Moreland's dismissal as administratrix would be reversed by this Court.

¶11. The Alabama attorneys, originally associated by Mittie Moreland's attorneys, Russell *et al.*, to prosecute the wrongful death case in Alabama, were subsequently associated by Jane Riley's attorneys, Langston *et al.*, and continued prosecuting the case. In January of 1989, this Court rendered its decisions in *Moreland I*, *Moreland II*, and *Moreland III*, and on April 14, 1989, Mittie Moreland was removed as a party plaintiff in the wrongful death suit. Subsequently, the jury returned a verdict in that suit for the plaintiff in the amount of $1.2 million.

¶12. Following the verdict, on December 15, 1989, Jane Riley filed in the Lee County Chancery Court a petition for declaratory relief, seeking a resolution of the issues left open by *Moreland III*. Specifically, Jane Riley asked the court to "make a determination of a reasonable fee due to the attorneys under the Mittie Moreland contract . . . [and] determine the award of the fees under the Mittie Moreland contract in a quantum merit [sic] amount." On December 22, 1989, an order was entered setting the date for a hearing on January 12, 1990, and on that same day the attorneys for Jane Riley went before the Honorable James Roberts in the Lee County Chancery Court and moved *ore tenus* for a ratification of their contingent fee agreement with Jane Riley, and an award of fees.

¶13. Jane Riley's counsel, Langston, represented to Chancellor Roberts that the fee was to be apportioned between the Alabama attorneys, who had actually handled the litigation, and the

Mississippi firms, and that the award to the Mississippi firms would be escrowed until there was a determination of any fee claims of Mittie Moreland's attorneys. After a full hearing, Judge James L. Roberts, Jr., issued an order authorizing a fee of $574,000, of which 45 percent went to the Alabama attorneys. Mr. Langston, however, did not file this order until February 3, 1992, apparently by mistake. Meanwhile, on July 25, 1990, Mittie Moreland filed her answer and cross-petition for fees in Lee County Chancery Court. At this point the matter was set for hearing on August 21, 1990, and subsequently continued to August 31, 1990. After numerous intervening delays, the matter finally came to trial on April 17, 18, and 19 of 1995.

¶14. During the trial, Mittie Moreland sought to establish that her attorneys, Russell *et al.*, were entitled to fees for their work on the case prior to the affirmance in ***Moreland III*** of the Hinds County Chancery Court order removing Mittie Moreland as administratrix. Ms. Moreland sought, in particular, to show that her attorneys had performed services at least as valuable as those of Jane Riley's attorneys. Ms. Moreland asserted that her attorneys were entitled to the entire fee amount by virtue of the Moreland/Russell contract and the fact that they had originally associated the Alabama attorneys. However, Ms. Moreland did concede that she would be willing to settle for 60 percent of the total fee awarded to the Mississippi attorneys by Judge Roberts. Jane Riley, for her part, asserted that ***Moreland III*** had foreclosed the consideration of any time spent by Russell *et al.* after Mittie Moreland's dismissal as administratrix, and that, under ***Moreland III,*** Russell *et al.* were only entitled to recover their reasonable expenses.

## STANDARD OF REVIEW

¶15. This Court reviews a chancellor's decision to award reasonable fees in probate matters under the familiar abuse of discretion standard. ***Scott v. Hollingsworth***, 487 So. 2d 811, 814 (Miss. 1986). Unif. Ch. Ct. R. 6.12. It is with this narrow standard in mind that each assignment of error must be considered.

> **I. WHETHER THE CHANCELLOR ERRED IN REFUSING TO AWARD ANY FEES TO RHETT RUSSELL AND RALPH POGUE FOR THEIR WORK IN CONNECTION WITH THE WRONGFUL DEATH SUIT OF MARK MORELAND.**

> **III. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THERE WAS INSUFFICIENT EVIDENCE UPON WHICH TO BASE AN AWARD OF ATTORNEYS' FEES.**

¶16. The chancellor correctly noted that under this Court's decision in ***Scott v. Hollingsworth***, the court has a duty to review the reasonableness of fees charged to an estate.

> Mississippi case law has long held, "The statute vests in the sound discretion of the court in which the administration is pending the duty to fix the fees of the attorney if it is of the opinion that the service was necessary and had been rendered in good faith."

***Scott,*** 487 So. 2d at 814 (*quoting*, ***Brown v. Franklin***, 166 Miss. 899, 903, 145 So. 752, 753 (1933)). Furthermore, Uniform Chancery Rule 6.12, provides in relevant part:

> In such cases, the amount allowed as attorney's fees will be fixed by the Chancellor at such sum

as will be reasonable compensation for the service rendered and expense incurred without being bound by any contract made with any unauthorized persons. If the parties make an agreement for a contingent fee the contract or agreement of the fiduciary with the attorney must be approved by the Chancellor. Fees on structured settlements shall be based on the "present cash value" of the claim.

In determining what constitutes a reasonable fee, this Court has said a chancellor should consider:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

*Dynasteel Corp. v. Aztec Industries Inc.*, 611 So. 2d 977, 986-87 (Miss. 1992).

¶17. In the instant case, the Chancellor applied both Rule 8.12 and the *Dynasteel* factors in arriving at his conclusion that Russell *et al.* were not entitled to a fee. The chancellor noted that Ms. Moreland chose to rely almost exclusively upon her argument that her attorneys were entitled to at least 60 percent of the Mississippi attorneys' fees under the Moreland/Russell contract.

¶18. This Court held in *Moreland III* that the contract between Mittie Moreland and Russell *et al.* "relates solely to the wrongful death action, and consequently the guardianship." While Chancellor Malski found the contract binding, he refused to rule on the reasonableness of the contingent fee percentage or the amount ultimately due under the contract. This Court further held in *that same case* that the Lee County Chancery Court "retained exclusive jurisdiction and authority to determine the amount ultimately due under the contract."

¶19. Judge Malski, in his order ratifying the contingency fee contract, realized that any action on the reasonableness of the proportionment of attorney's fees would be premature. This Court in *Moreland III further* reserved the issue of fee proportionment and left it for the Chancellor to determine the appropriate division.

¶20. After hearing the evidence presented to him, Special Chancellor Mason found Russell *et al.* failed to prove that they were entitled to any fee for their work performed on the Moreland wrongful death case. The Chancellor thus awarded the entire fee to Langston *et al.*

# CONCLUSION

¶21. The denial of fees to Mr. Russell *et al.* under the contingency contract with Mittie Moreland is affirmed. The chancellor had before him ample evidence to evaluate the claim for fees, and applied the correct legal standard in determining that Ms. Moreland had failed to carry her burden of proving entitlement to a fee. There was no abuse of discretion by the court below. For these reasons, this case is affirmed.

¶22. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J. ROBERTS AND WALLER, JJ., NOT PARTICIPATING.**

 

## McRAE, JUSTICE, DISSENTING:

¶23. The chancellor below had sufficient evidence before him to properly apportion the attorneys' fees. Given this Court's conclusion in *Moreland III* that declaratory judgment by the chancellor was proper, it is clear that the contract between Mittie Moreland and the Russell firm was a binding contingency contract. *Riley v. Moreland*, 537 So. 2d 1348, 1353 (Miss. 1989). This case should be remanded with specific instructions for the chancellor to apportion the proper fee amount to the Russell firm.

¶24. *Moreland III* stated that the determination of the extent and amount of fees was to be made by the court below when it had before it "all the necessary information concerning the extent and value of services rendered under the contract." *Id.* at 1355. The chancellor had a wealth of evidence to show that the Russell firm was entitled to at least a portion of the fees. The Russell firm established Mittie Moreland as the administratrix of the Mark Moreland estate, and subsequently filed the Lee County wrongful death suit on behalf of the estate. The firm also handled the motions and responses related to Jane Riley's efforts to assume authority over the estate and the wrongful death suit. As the majority notes, throughout the squabble that ensued between Riley and Moreland, the Russell firm continued to perform services pursuant to the contract between it and Moreland as related to the wrongful death case.

¶25. Therefore, it is apparent that the Russell firm did some of the work for which it was initially retained, associated another firm to prosecute the wrongful death case in Alabama, and continued to perform various tasks on Moreland's behalf. Even if the Langston firm did more work than the Russell firm, as the chancellor below and the majority now imply, the Russell firm should still be allowed a portion of the fees. Even if the services provided by the Russell firm do not reach the requested 60%, the chancellor had before him evidence that the Russell firm, as required by its contingency fee arrangement, provided services. Such evidence precludes a finding that the Russell

firm is not entitled to some portion of the attorneys' fees. The chancellor was, therefore, manifestly in error.

¶26. Accordingly, I dissent.

**MILLS, J., JOINS THIS OPINION.**